**Doyle Franklin EARLS**

v.

**STATE of Tennessee.**

Supreme Court of Tennessee.

June 18, 1973.

Erby L. Jenkins, Paul E. Dunn, Ray H. Jenkins, Knoxville, for plaintiff in error.

David M. Pack, Atty. Gen., of Tenn., Bart C. Durham, Asst. Atty. Gen., Nashville, Ivo W. Sanders, Dist. Atty. Gen., Loudon, for defendant in error.

## OPINION

McCANLESS, Justice.

Doyle Franklin Earls was tried and convicted in the Criminal Court of the second degree murder of Richard Lynn Barger, a seventeen year old boy. The defendant perfected an appeal to the Court of Criminal Appeals, who reversed the conviction on the ground that certain evidence had been improperly admitted due to an illegal search and seizure. We granted certiorari to decide the validity of that search, and whether the evidence so obtained was properly admitted.

In essence, the issue is twofold: (1) was the search warrant valid, and, if not, (2) can the search be justified as lawful on the basis of consent when that consent was obtained under color of authority, that is to say, a search warrant?

The facts pertinent to the determination of these issues are that Sheriff Russell obtained the following search warrant:

"THE SEARCH WARRANT

"The affidavit for the warrant says:

" 'I, Freeman Russell, make oath that I am Sheriff duly elected, appointed and

qualified as such in said State and County; that on the 13th day of August, 1969, I received information from confidential formant (sic) a responsible and reliable citizen of said State and County, whose name I have this day disclosed to the Judge to whom this application is made, that there was stolen from Lynn Barger on the 9th day of August, 1969 the following described personal property, the same being the personal property of Lynn Barger and of the value of $202.00 and particularly described as follows: one (1) leather billfold and money in the amount of $150.00 and two (2) payroll checks in the amount of $52.00, that Doyle Frank Earls, Alias, who resides in or occupies and is in possession of the following described premises, viz: the following described premises, to-wit, situated in district No. 5 of Loudon Co., State of Tennessee, it being that tract or parcel of land known as the Watt Johnson farm, bounded as follows, North by B. F. Parker, East by T. L. Monteith, South by E. M. Galyon, West by A. J. Parker, containing 100 acres more or less, located in old 5th (now 4th) District, Loudon County, Tennessee, now has in his possession in the building hereinbefore described on said premises the aforesaid property hereinabove described, which the said Doyle Frank Earls is unlawfully keeping in his possession and under his control in violation of law as made and provided in such cases.' "

Armed with the search warrant, Sheriff Russell and five other officers went to the home of the defendant. The defendant was not under arrest. The Sheriff handed him a copy of the warrant and began reading the original to him. As the Sheriff was reading, the defendant threw his copy to the ground and said: "You needn't to have brought a search warrant. You gentlemen are welcome to search anywhere on my premises you want to search and take anything you find." Following this the officers searched the defendant's home and

took from it a torn love letter to "Marsha"; and in his truck they found a number of tools, the most important of which was a pair of wire cutters subsequently determined by the laboratories of the Federal Bureau of Investigation to be those that had been used to sever a barbed wire fence surrounding the pond where the body of the deceased was found. These items were admitted into evidence in the trial court, and as to the question of the validity of the search, the trial court held:

"It's the Court's feeling that the question of the reasonableness or unreasonableness as a consent question would rest upon the question of whether or not the warrant was valid. And it's the Court's opinion that a valid and reasonable search was made."

The Court of Criminal Appeals reversed the case holding: (1) that the search warrant was invalid under the test enumerated in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 [1964]; and (2) that under the decision of Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 [1968], there was no voluntary consent and the search was illegal.

 As to the question of the validity of the search warrant, we are of the opinion that it was not valid. Recent cases have fully developed the underlying requirements of the Fourth and Fourteenth Amendments to the Constitution of the United States. It is said that an officer may not properly issue a warrant to search a private dwelling unless he can find probable cause from the facts and circumstances presented to him under oath or affirmation. Mere affirmance of belief or suspicion is not enough. Nathanson v. United States, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 [1933].

 The inferences from the facts which lead to the complaint must be drawn by a neutral magistrate and the magistrate must judge for himself the persuasiveness of the facts relied on by a complaining of-

ficer to show probable cause. He should not accept without question the complainant's mere conclusion. Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 [1958].

Both the *Giordenello* case and the *Nathanson* case were cited by the court in the leading case of Aguilar v. Texas, supra, in which it said:

> "Here the 'mere conclusion' that the petitioner possessed narcotics was not even that of the affiant himself; it was that of an unidentified informant. The affidavit here not only 'contains no affirmative allegation that the affiant spoke with personal knowledge of the matters contained therein,' it does not even contain an 'affirmative allegation' that the affiant's unidentified source 'spoke with personal knowledge.' . . .."

We must measure the warrant here involved against the standards of the *Aguilar* case. Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637. We do not find that the warrant meets those standards in that it does not contain a sufficient statement of the underlying circumstances from which the inferences may be drawn to find probable cause.

It is the State's contention that in the event the warrant is invalid, then the circumstances surrounding the search indicate that the defendant voluntarily consented to the search. The defendant maintains that no consent was or could be given under these circumstances. Both parties rely heavily on Bumper v. North Carolina, supra, as a basis for their argument. The issue before us is identical with that presented in the *Bumper* case.

Can a search be justified as lawful on the basis of consent when that "consent" has been given only after the official conducting the search has asserted that he possesses a warrant? The *Bumper* opinion holds, ". . . that there can be no consent under such circumstances * * * [because] the situation is instinct with coercion—albeit colorably lawful coercion. Where there is coercion there cannot be consent." The defendant relies on this language to support the proposition that consent can never be given under the situation involved in this case. The State argues that the *Bumper* opinion does not establish any such absolute prohibition. Rather, it contends that such a holding, if allowed to stand, "would invalidate the well-established rule . . . that the voluntariness of a consent to search is a question of fact to be decided in light of the attendant circumstances by the trier of fact," and relies on the following excerpt from the *Bumper* opinion in support of its contention:

> "When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given. This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority."

We are asked, therefore, to examine and interpret the *Bumper* opinion in order to determine its requirements. We do not believe that the *Bumper* opinion is a blanket prohibition that no consent can ever be given where an invalid warrant is involved. Such a holding ignores the realities of life and denies the long standing principle that the existence and voluntariness of a consent to search and seizure is a question of fact to be decided in the light of attendant circumstances. White v. United States, 444 F.2d 724 [10th Cir. 1971]. The creation of such a legal fiction is inherent with danger. We agree with Justice Black in his dissent to the opinion of the court in the *Bumper* case:

> "Despite the statements of Mrs. Leath cited above, and despite the clear finding of consent by the trial judge, who personally saw and heard Mrs. Leath testi-

fy, this Court, refusing to accept Mrs. Leath's sworn testimony that she did freely consent and overruling the trial judge's findings, concludes on its own that she did not consent. I do not believe the Court should substitute what it believes Mrs. Leath should have said for what she actually said—'it was all my own free will.' I cannot accept what I believe to be an unwarranted conclusion by the Court."

■ We believe that the *Bumper* case stands for the proposition that it is possible to give valid consent to search even after the existence of the warrant is made known, but the State must show by clear and convincing evidence that the consent is not based upon the warrant and was not coerced by other factors. It is conceivable that a person could give a voluntary and uncoerced consent to search even though he had been informed that the officers had a search warrant, but the State would bear the burden of showing that the consent was sufficiently independent of the warrant to remove the taint of its coercive nature.

Having decided that the Bumper case concerns itself with the quantum of proof brought forth by the prosecution, we must now determine the standard for meeting the burden of proof and the factors that must be considered in its evaluation. The sole indication given in the *Bumper* case is that the burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority.

In the *Bumper* case the court emphasized that the party to whom the warrant was presented was "a 66-year old Negro widow, in a house located in a rural area at the end of an isolated mile-long dirt road." Further, there were "four white law enforcement officers—the county sheriff, two of his deputies, and a state investigator—". The court seems to imply that age, intelligence, socio-economic class, and environment are factors to be considered in determining whether consent was given.

This process of analysis is emphasized by the recent case of Hoover v. Beto, 5 Cir., 467 F.2d 516 [1972]. Hoover had filed a petition for habeas corpus relief which was denied by the United States District Court for the Southern District of Texas. A panel of the Fifth Circuit Court of Appeals reversed this decision and noted that Hoover "was himself a lawyer with extensive experience in criminal law and its practical realities," and that he had said a warrant was unnecessary. These factors seemed to be overcome by the fact that Hoover was awakened at 3:30 in the morning, confronted by a "veritable posse of officers" and there was no evidence or valid inference that he was so astute as to have recognized the defect in the affidavit and hence waived the invalidity of the warrant and voluntarily consented to the search. The coercion of the warrant prevented Hoover's consent from being voluntary.

Subsequently, however, on a rehearing of the case *in banc*, the Court of Appeals reversed their panel decision and held that consent was not involuntary because of the alleged invalidity of the warrant. The court stated that whether consent to search has been given is a question of fact. Hoover told Officer Hodges "that the search warrant was unnecessary for [him] to come on in his house and look wherever [he] pleased." The court found that this testimony constituted clear and convincing evidence of a voluntary consent to the search, irrespective of the validity of the warrant. After detailing the circumstances in the *Bumper* case, viz.: that the woman was 66 years of age, a widow of patently limited education, etc., the court emphasized the apparent difference in the circumstances presented in the *Bumper* case and the situation presented in the *Hoover* case. "The majority holding in *Bumper* was undoubtedly based on strong circum-

stances." Hoover v. Beto, supra, at page 521.

█ Hence, we are left with no explicit statement as to what is necessary to meet the burden. Instead we must simply make our decision on the basis of the circumstances presented in the case law. Having thoroughly reviewed the facts, we are of the opinion that Earls voluntarily consented to the search, and the fruits of the search were admissible into evidence against him. While Earls was not a lawyer with extensive criminal experience, he did nevertheless have some college education. The record further reveals that he engaged in investment trading of stocks and bonds. And, as was noted above when the Sheriff handed him a copy of the warrant, the defendant threw it to the ground and stated, "You needn't to have brought a search warrant. You gentlemen are welcome to search anywhere on my premises you want to search and take anything you find." In all cases the question turns on whether the party really consents to the search or merely acquiesces to the warrant. In our opinion, the facts "constitute clear and convincing evidence of voluntary consent to the search, irrespective of the validity of the warrant." Earls voluntarily consented to and invited the search. That consent was neither coerced nor compelled by the search warrant. As the court stated in the *Hoover* case, supra: The argument that express declarations of invitation and consent, such as were present here, constitute nothing "more than acquiescence to a claim of lawful authority" neither comports with reason and logic nor with human experience and common sense.

We reverse the judgment of the Court of Criminal Appeals and affirm the judgment of the trial court.

DYER, C. J., CHATTIN and HUMPHREYS, JJ., and WILSON, Special Judge, concur.