WIEAND, Judge:
During an investigation into the suspicious death of the wife of Charles Bagley, police obtained and executed twelve search warrants. After Bagley had been arrested and charged with criminal homicide, he moved to suppress evidence seized pursuant to the execution of eight such warrants. After hearings thereon, the trial court suppressed evidence seized pursuant to four warrants. The Commonwealth appealed. It has certified that the suppression court’s order, if allowed to stand, will effectively terminate the prosecution. See: Commonwealth v. Dugger, 506 Pa. 537, 486 A.2d 382 (1985).
At or about 1:00 a.m. on March 26, 1989, Easter Sunday, Charles Bagley arrived at the emergency room of Paoli Memorial Hospital, carrying the body of his wife, Yvonne. Bagley said that his wife had been electrocuted accidentally when an electrical appliance had fallen into the hot tub in which she had been bathing. He was overheard by emergency room personnel to say that he had torn apart the bathroom in which the accident had occurred and was considering the burning of his home. Bagley also said that he did not want police to be notified about his wife’s death. Later the same day, the administrative nurse at the hospital notified Radnor Township Police of the incident and expressed the opinion that the circumstances were suspicious. She told police that she had observed a laceration above Mrs. Bagley’s right eye and bruises on her body. She also narrated the statements which had been made by the defendant-appellee upon his earlier arrival at the hospital. Based on this information, Radnor Township Police and the District Attorney of Delaware County began an investigation *193 which culminated in Bagley’s arrest for the killing of his wife.
In reviewing an appeal by the Commonwealth from an order suppressing evidence,
we must consider only the evidence of the defendant’s witnesses and so much of the evidence for the prosecution as read in the context of the record as a whole remains uncontradicted. Commonwealth v. Hamlin, 503 Pa. 210, 469 A.2d 137 (1983) (plurality opinion). While we are bound by the [suppression] court’s findings of fact if supported by the record, we are not bound by the court’s legal conclusions which are drawn from the facts of the case. Commonwealth v. Cortez, 507 Pa. 529, 491 A.2d 111 (1985).
Commonwealth v. Lagana, 517 Pa. 371, 375-376, 537 A.2d 1351, 1353-1354 (1988). See also: Commonwealth v. James, 506 Pa. 526, 532-533, 486 A.2d 376, 379 (1985); Commonwealth v. Person, 385 Pa.Super. 197, 200, 560 A.2d 761, 762-763 (1989). “We will ... affirm the decision of the suppression court ‘if it can be sustained for any reason whatsoever, even if the [suppression] court offered an erroneous reason to support its action.’ ” Commonwealth v. Bowers, 400 Pa.Super. 377, 381, 583 A.2d 1165, 1167 (1990), quoting Commonwealth v. Reidenbaugh, 282 Pa.Super. 300, 309-310, 422 A.2d 1126, 1131 (1980). See also: Commonwealth v. Shaw, 494 Pa. 364, 368 & n. 1, 431 A.2d 897, 899 & n. 1 (1981); Commonwealth v. Nelson, 320 Pa.Super. 488, 493-494, 467 A.2d 638, 641 (1983).

Search Warrant No. 12504

Search warrant no. 12504 was issued on March 26, 1989, Sunday, and was executed the same day, at or about 1:30 p.m., by Detective Joseph Maguire of the Radnor Township Police Department. The warrant identified the criminal violation being investigated as “Suspicious Death” and authorized police to search the Bagley home for and seize “[a]ny items which may be related to the death of Yvonne *194 Bagley.” The affidavit of probable cause which supported the issuance of the search warrant stated:
On 26 March 89 at 0954 hours, Officer Antoini of the Radnor Township police Department received a phone call at the police station from a Janet Dragish, the administrative nurse at Paoli Memorial Hospital. Janet Dragish told Officer Antoini that at approximately 0100 hours on 26 March 89, a Charles Bagley brought his wife into Paoli Memorial Hospital wrapped in a wet blanket and stated that she was in a hot tub in their home and an electric light fell into the hot tub and electrocuted her. Janet Dragish stated that she felt that the death was suspicious and felt that the police should be called.
On 26 March 89, at 1110 hours, Sgt Leighton spoke to Janet Dragish by phone in which she states that she had viewed the body of Yvonne Bagley and saw a laceration above the right eye, and that there were other bruises on her body. Janet Dragish was told by Charles Bagley that he had torn the room apart where this incident took place and that he was thinking about setting fire to the house. Based on the above mentioned facts, this affiant asks that a search warrant be issued to process the home for any evidence such as fibers, hair, prints and any other items which may have to do with the suspicious death of Yvonne Bagley.
The suppression court held that the search warrant was defective on its face because, in violation of Pa.R.Crim.P. 2006(e), it failed to identify any crime which had been committed and also because it did not particularly describe the property for which the warrant had been issued. The Commonwealth argues on appeal that, given the limited information possessed by the police concerning Yvonne Bagley’s death, search warrant no. 12504 stated the items being sought as specifically as possible under the circumstances, thereby passing constitutional muster. The Commonwealth also argues that, to the extent the warrant may have technically violated Pa.R.Crim.P. 2005(b) and 2006(e), *195 the violations were not of constitutional dimension and did not require suppression of the evidence seized.
“It is a fundamental rule of law that a warrant must name or describe with particularity the property to be seized and the person or place to be searched____ In addition, the search may not go beyond the scope of the warrant.” Commonwealth v. Eichelberger, 352 Pa.Super. 507, 513, 508 A.2d 589, 592 (1986), citing Pennsylvania Constitution, Article I, Section 8; Pa.R.Crim.P. 2005(b) and (c); and Commonwealth v. Searles, 450 Pa. 384, 302 A.2d 335 (1973). See also: Commonwealth v. Reese, 520 Pa. 29, 32, 549 A.2d 909, 910 (1988), cert. denied, — U.S.-, 110 S.Ct. 3237, 111 L.Ed.2d 748 (1990); Commonwealth v. Bleigh, 402 Pa.Super. 169, 174-176, 586 A.2d 450, 453 (1991).
The particularity requirement prohibits a warrant that is not particular enough and a warrant that is overbroad. These are two separate, though related, issues. A warrant unconstitutional for its lack of particularity authorizes a search in terms so ambiguous as to allow the executing officers to pick and choose among an individual’s possessions to find which items to seize. This will result in the general “rummaging” banned by the fourth amendment. See Marron v. United States, 275 U.S. 192, 195, 48 S.Ct. 74, 75, 72 L.Ed. 231 (1927). A warrant unconstitutional for its overbreadth authorizes in clear or specific terms the seizure of an entire set of items, or documents, many of which will prove unrelated to the crime under investigation. The officers executing such a warrant will not rummage, but will “cart away all documents.” Application of Lafayette Academy, 610 F.2d 1, 3 (1st Cir.1979). An overbroad warrant is unconstitutional because it authorizes a general search and seizure.
Commonwealth v. Santner, 308 Pa.Super. 67, 69-70 n. 2, 454 A.2d 24, 25 n. 2 (1982), cert. denied, 468 U.S. 1217, 104 S.Ct. 3585, 82 L.Ed.2d 883 (1984). In interpreting the particularity requirement set forth in Article I, Section 8 of the Pennsylvania Constitution, the Supreme Court has said:
*196 The language of the Pennsylvania Constitution requires that a warrant describe the items to be seized “as nearly as may be____” The clear meaning of the language is that a warrant must describe the items as specifically as is reasonably possible. This requirement is more stringent than that of the Fourth Amendment, which merely requires particularity in the description. The Pennsylvania Constitution further requires the description to be as particular as is reasonably possible. See Commonwealth v. Reese, 520 Pa. 29, 31-32, 549 A.2d 909, 910 (1988) (Nix, C.J., dissenting) (Pennsylvania particularity requirement more stringent than that of the Fourth Amendment because Pennsylvania particularity requirement precedes probable cause requirement).
It is settled Fourth Amendment jurisprudence that a warrant must specifically list the things to be seized. Lo-Ji Sales, Inc. v. New York, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979); Stanford v. Texas, 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965). “The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.” Marron v. United States, 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927). The more rigorous Pennsylvania constitutional provision requires no less.
Although some courts have treated overbreadth and ambiguity as distinct defects in warrants, e.g. Commonwealth v. Santner, 308 Pa.Super. 67, 68 n. 2, 454 A.2d 24, 25 n. 2 (1982), both doctrines diagnose symptoms of the same disease: a warrant whose description does not describe as nearly as may be those items for which there is probable cause. Consequently, in any assessment of the validity of the description contained in a warrant, a court must initially determine for what items probable cause existed. The sufficiency of the description must then be measured against those items for which there *197 was probable cause. Any unreasonable discrepancy between the items for which there was probable cause and the description in the warrant requires suppression. An unreasonable discrepancy reveals that the description was not as specific as was reasonably possible.
Commonwealth v. Grossman, 521 Pa. 290, 296-297, 555 A.2d 896, 899-900 (1989) (footnote omitted).
We have reviewed search warrant no. 12504 in the instant case and the circumstances surrounding its issuance, and we agree that the warrant was defective. A close reading of the affidavit of probable cause, construing it in a realistic and common sense manner, leads to the inescapable conclusion that the warrant was issued not upon a showing of reasonable probability that a crime had been committed, but, rather, upon nonspecific suspicions surrounding the death of Yvonne Bagley. As a result, the warrant stated no crime but suggested only that it had been issued in the investigation of a suspicious death. It authorized police to seize anything that may have been related to Mrs. Bagley’s death. This was done without stating any cause for believing that Yvonne Bagley’s death had been a criminal homicide. It is readily apparent, therefore, that the primary purpose for the search warrant was not to search for specific evidence of a crime which had been committed, but merely to allow police to conduct a general investigation to determine whether Yvonne Bagley’s death might have been criminal.
The use of a search warrant as a general investigatory tool is prohibited by both the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution. “A search warrant serves to authorize the seizure of identifiable and existing property. It is not available as a general investigatory tool to be used in place of a grand jury.” In re Casale, 512 Pa. 548, 555, 517 A.2d 1260, 1263 (1986). “[M]ere suspicions do not constitute probable cause to support a search warrant.” Commonwealth v. Smith, 511 Pa. 36, 47, 511 A.2d 796, 801 (1986), cert. denied, 479 U.S. 1006, 107 S.Ct. 643, 93 L.Ed.2d *198 700 (1986). See also: Commonwealth v. Corleto, 328 Pa.Super. 522, 528-529, 477 A.2d 863, 866 (1984); Commonwealth v. Kanouff, 315 Pa.Super. 392, 394-395, 462 A.2d 251, 252 (1983). A search warrant “may not be issued unless the affidavit alleges a preexisting crime.” Comment (b) to Pa.R.Crim.P. 2002. See: United States ex rel. Campbell v. Bundle, 327 F.2d 153, 162-163 (3d Cir.1964); Commonwealth ex rel. Ensor v. Cummings, 416 Pa. 510, 512-513, 207 A.2d 230, 231 (1965). See also: Pa.R.Crim.P. 2006(e). We conclude, therefore, that the suppression court correctly invalidated search warrant no. 12504 as a general investigative tool.
We reject the Commonwealth’s contention that the police were entitled in good faith to rely upon the magistrate’s determination that a warrant could properly be issued. In Commonwealth v. Edmunds, 526 Pa. 374, 586 A.2d 887 (1991), the Pennsylvania Supreme Court held that there is no good faith exception to the exclusionary rule applicable to violations of Article I, Section 8 of the Pennsylvania Constitution.
The Commonwealth’s contention that the initial search of the Bagley home was made with Bagley’s voluntary consent presents a more difficult issue. This argument is based on events which occurred prior to arrival of the search warrant. These circumstances appear from the suppression court’s findings of fact as follows:
2. At approximately noon on March 26, 1989, Detective Michael Honicker of the Delaware County Criminal Investigation Division went to the defendant’s residence at 240 Radnor-Chester Road, Radnor, Pennsylvania. Detective Honicker was accompanied by a uniformed officer of the Radnor Township Police Department.
3. Detective Honicker went to the defendant’s residence for the purpose of taking a statement from the defendant concerning the death of his wife, and to await the arrival of a search warrant, the application for which was being prepared, in order to “process the residence as a crime scene.”
*199 4. Upon arriving at the defendant’s residence, Detective Honicker knocked on the door which was answered by a person other than the defendant. Detective Honicker identified himself and asked to speak to Mr. Bagley.
5. The defendant walked out and met Detective Honicker and the uniformed officer who was with him, and he led them back to the living room area of the house. Upon meeting the defendant, Detective Honicker again identified himself and told the defendant that his purpose in being there was to investigate the death of defendant’s wife.
6. While speaking to defendant, Detective Honicker noted the presence of other people in the house and asked defendant why those persons were present. The defendant told the detective that they were in the process of cleaning the upstairs floor of the house.
7. Detective Honicker requested that defendant summon downstairs the people who were on the upstairs floor of the house and instruct them to stop their cleaning work. Detective Honicker explained to defendant that he wanted the cleaning stopped “... because we were in the process of obtaining a search warrant to process the residence for a crime scene.”
8. The defendant complied with Detective Honicker’s direction and called the people downstairs. He further told Detective Honicker that a search warrant would not be needed, but Detective Honicker advised the defendant that it was “our policy.”
9. When the people in defendant’s house came downstairs, they were taken to another area of the house by the uniformed officer who accompanied Detective Honicker.
10. Detective Honicker was alone with the defendant in the living room area of the house. He advised the defendant of his Miranda warnings, and asked defendant if he wished to give a statement concerning his wife’s death.
*200 11. The defendant told Detective Honicker that he would give a statement, and he proceeded to explain his version of the events surrounding the death of his wife.
12. During the course of making his statement, the defendant told Detective Honicker that it would be easier to explain the events if he showed the detective what happened; with Detective Honicker’s agreement, the defendant proceeded to take Detective Honicker to the various areas of the house where the events had occurred.
13. The defendant took Detective Honicker into the bedroom and bathroom areas. While in the bathroom area, Detective Honicker noticed that various fixtures and faucets were missing, and he was shown by the defendant the electrical outlet into which the defendant claimed the soldering gun which had caused his wife to be electrocuted was plugged.
14. After showing Detective Honicker various areas of the house, the defendant then took him outside. The defendant told him that he had attempted to destroy the soldering gun and electrical wire by burning them in the fireplace, and had then removed them from the fireplace and put them outside in the trash with other items removed from the bathroom.
15. The defendant then showed Detective Honicker the items removed from the bathroom and the charred remains of the soldering gun and electrical wire which were in bags standing next to trash cans outside the house.
16. Detective Honicker and the defendant returned to the house and sat down so that the detective could prepare a written statement of the defendant’s version of the events surrounding his wife’s death.
17. While Detective Honicker was preparing the written statement, other detectives and police officers arrived at the Bagley residence with search warrant No. 12504 at approximately 1:15 to 1:30 P.M.
*201 18. The warrant was read to the defendant, and a search of the premises was then conducted.
It is well settled that if a person voluntarily consents to a search, evidence found as a result of that search is admissible against him. See: Schneckloth v. Bustamante, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). See also: Commonwealth v. Latshaw, 481 Pa. 298, 303, 392 A.2d 1301, 1304 (1978), cert. denied, 441 U.S. 931, 99 S.Ct. 2050, 60 L.Ed.2d 659 (1979); Commonwealth v. Boyer, 455 Pa. 283, 286, 314 A.2d 317, 318 (1974); Commonwealth v. Walsh, 314 Pa.Super. 65, 73, 460 A.2d 767, 771 (1983). The consent, however, must be “given freely, specifically, unequivocally, and voluntarily.” Commonwealth v. Mamon, 449 Pa. 249, 255, 297 A.2d 471, 475 (1972). See also: Commonwealth v. Harris, 429 Pa. 215, 221, 239 A.2d 290, 293 (1968); Commonwealth v. Lowery, 305 Pa.Super. 66, 74, 451 A.2d 245, 248-249 (1982). “[T]he question whether a consent to a search was in fact ‘voluntary’ or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances.” Schneckloth v. Bustamonte, supra, 412 U.S. at 227, 93 S.Ct. at 2047-2048, 36 L.Ed.2d at 862-863. See also: Commonwealth v. Hubbard, 472 Pa. 259, 274-275, 372 A.2d 687, 693-694 (1977); Commonwealth v. Smagala, 383 Pa.Super. 466, 474, 557 A.2d 347, 350 (1989); Commonwealth v. Elliott, 376 Pa.Super. 536, 553, 546 A.2d 654, 662 (1988). The burden of proving a valid consent to search rests upon the Commonwealth. Commonwealth v. Griffin, 232 Pa.Super. 163, 167-168, 336 A.2d 419, 421 (1975) . See also: United States v. Sebetich, 776 F.2d 412, 424 (3d Cir.1985), cert. denied, 484 U.S. 1017, 108 S.Ct. 725, 98 L.Ed.2d 673 (1988); Commonwealth v. Woods, 240 Pa.Super. 72, 75, 368 A.2d 304, 306 (1976); Commonwealth v. Tribblett, 242 Pa.Super. 164, 167, 363 A.2d 1212, 1213 (1976) .
The suppression court found that Bagley’s consent had not been voluntary. It based its finding upon the decision of the United States Supreme Court in Bumper v. North *202 Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). The issue before the Supreme Court in Bumper was “whether a search can be justified as lawful on the basis of consent when that 'consent’ has been given only after the official conducting the search has asserted that he possesses a warrant.” Id., 391 U.S. at 548, 88 S.Ct. at 1791, 20 L.Ed.2d at 802. The Supreme Court held that there could be no valid consent under such circumstances, reasoning as follows:
When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given. This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority. A search conducted in reliance upon a warrant cannot later be justified on the basis of consent if it turns out that the warrant was invalid. The result can be no different when it turns out that the State does not even attempt to rely upon the validity of the warrant, or fails to show that there was, in fact, any warrant at all.
When a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion — albeit colorably lawful coercion. Where there is coercion there cannot be consent.
Id., 391 U.S. at 548-550, 88 S.Ct. at 1792, 20 L.Ed.2d at 802-803 (footnotes omitted). See also: Commonwealth v. White, 459 Pa. 84, 327 A.2d 40 (1974), cert. denied, 421 U.S. 971, 95 S.Ct. 1967, 44 L.Ed.2d 461 (1975); Commonwealth v. Banahasky, 250 Pa.Super. 495, 378 A.2d 1257 (1977); Commonwealth v. Pichel, 229 Pa.Super. 103, 323 A.2d 113 (1974). But see: Earls v. State, 496 S.W.2d 464 (Tenn.1973) (Bumper v. North Carolina does not establish blanket prohibition against finding voluntary consent after existence of a search warrant is made known; rather, State must show by clear and convincing evidence that consent was not based upon warrant or coerced by other factors).
*203 Numerous cases decided since Bumper have found consents to search voluntary despite the fact that police threatened to seek or to obtain search warrants if consent were not given. See: United States v. Garcia, 890 F.2d 355, 360-362 (11th Cir.1989) (consent to search voluntarily given even though preceded by police threat to seek warrant); United States v. Twomey, 884 F.2d 46, 50-52 (1st Cir.1989), cert. denied, — U.S.-, 110 S.Ct. 2592, 110 L.Ed.2d 273 (1990) (consent valid where police said they intended to get warrant if consent to search not given); Commonwealth v. Woods, supra (statement by police officer that he would procure search warrant if defendant did not consent to search was not so implicity coercive as to render consent involuntary). See generally: 3 W. LaFave, Search and Seizure, § 8.2(c) (2d Ed. 1987) (collecting cases). See also: United States v. Castillo, 866 F.2d 1071, 1081-1082 (9th Cir.1989); United States v. Long, 866 F.2d 402, 404-405 (11th Cir.1989); United States v. Stallings, 810 F.2d 973, 976 (10th Cir.1987); United States v. Raines, 536 F.2d 796, 801 (8th Cir.1976), cert. denied, 429 U.S. 925, 97 S.Ct. 327, 50 L.Ed.2d 293 (1976); United States v. Faruolo, 506 F.2d 490, 493-495 (2d Cir.1974); United States v. Boukater, 409 F.2d 537, 538 & n. 2 (5th Cir.1969); State v. Owens, 418 N.W.2d 340, 343-344 (Iowa 1988); People v. McClure, 39 Cal.App.3d 64, 69-70, 113 Cal.Rptr. 815, 818-819 (1974). Thus, it has been said that “ ‘where law enforcement officers indicate only that they will attempt to obtain or are getting a warrant such a statement cannot serve to vitiate an otherwise consensual search.’ ” United States v. Dennis, 625 F.2d 782, 793 (8th Cir.1980), quoting United States v. Culp, 472 F.2d 459, 461 n. 1 (8th Cir.1973), cert. denied, 411 U.S. 970, 93 S.Ct. 2161, 36 L.Ed.2d 692 (1973). See: United States v. Tutino, 883 F.2d 1125, 1137 (2d Cir.1989), cert. denied, 493 U.S. 1081, 110 S.Ct. 1139, 107 L.Ed.2d 1044 (1990) (consent given after police said they were in process of getting search warrant was voluntary; such a statement by police was not coercive).
*204 Instantly, Detective Honicker did not represent to appellee that he had a warrant authorizing him to conduct a search. He also did not threaten to obtain a warrant if appellee did not consent to a search. In fact, Detective Honicker had no intention of conducting a search. His purpose in going to appellee’s home was to take a statement from appellee and to await the arrival of the search.warrant, which was then being obtained by Detective Maguire. However, Honicker did say to appellee that a warrant was being obtained. Bagley responded by telling Detective Honicker that a search warrant would not be needed. In the face of this manifestation of consent, Honicker informed Bagley that it was police “policy” to wait for the search warrant. Appellee was then advised of his Miranda rights and began giving a statement concerning the death of his wife. During this statement, Bagley said that it would be easier to show the detective how the events surrounding his wife’s death had occurred. Appellee then took Detective Honicker on a tour of various areas of the house and the surrounding grounds and specifically pointed out to him all the evidence which was later seized.[1]
Viewing the totality of these circumstances, we are satisfied that appellee voluntarily granted consent for Honicker to inspect his home. The circumstances of Bagley’s conversation with Honicker prior to the arrival of the search warrant belie any suggestion of coercion, either of an express or implied nature. It was appellee who, without a request to do so, insisted upon showing Honicker around the house so that he could better explain his own exculpatory version of the events leading to his wife’s death, specifically pointing out to the detective all of the items of evidence which were subsequently seized. Although the actual seizure of evidence from appellee’s home was not made until after the invalid warrant had arrived, Bagley, by his prior actions in freely showing evidence to Detective Honicker, abandoned any reasonable expectation of privacy which he enjoyed with respect to such property. See: Katz *205 v. United States, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576, 582 (1967) (“What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.”). See also: United States v. Paulino, 850 F.2d 93, 97 (2d Cir.1988), cert. denied, 490 U.S. 1052, 109 S.Ct. 1967, 104 L.Ed.2d 435 (1989) (in order to demonstrate reasonable expectation of privacy in area searched, person challenging search must first demonstrate subjective desire to keep his effects private); United States v. Berrong, 712 F.2d 1370, 1373 (11th Cir.1988), cert. denied, 467 U.S. 1209, 104 S.Ct. 2397, 81 L.Ed.2d 354 (1984) (same). Cf. United States v. Horowitz, 806 F.2d 1222, 1226 (4th Cir.1986) (defendant’s willful disclosure of his employer’s trade secrets to a competing bidder for a government contract vitiated any reasonable expectation of privacy he may have had in them); United States v. Buettner-Janusch, 646 F.2d 759, 766-767 (2d Cir.1981), cert. denied, 454 U.S. 830, 102 S.Ct. 126, 70 L.Ed.2d 107 (1981) (defendant college professor forfeited any reasonable expectation of privacy in enclosed areas of his laboratory by granting permission to use the areas to an undergraduate research assistant, a fellow professor and at least eight other persons). Because Honicker had been invited to inspect the Bagley home, he was voluntarily placed in a position where he could observe various items of evidence. Because these items were rendered obvious by his conduct, Bagley voluntarily surrendered any right of privacy with respect thereto. With respect to the items which appellee had already placed into the trash outside his home, moreover, he manifested a clear intent to abandon any reasonable expectation of privacy in such property even prior to the time when he voluntarily showed such items to Detective Honicker. See: California v. Greenwood, 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988) (no reasonable expectation of privacy exists in trash left for collection in an area accessible to the public). See also: Commonwealth v. Perdue, 387 Pa.Super. 473, 480-482, 564 A.2d 489, 492-493 (1989); Commonwealth v. Cihylik, 337 Pa.Super. 221, 486 A.2d 987 (1985); Commonwealth v. Minton, 288 Pa.Super. *206 381, 390-392, 432 A.2d 212, 216-217 (1981). Therefore, police could subsequently seize the items of evidence even though the search warrant had been improperly issued. The invalidity of the warrant did not compel the suppression of this evidence. The suppression court erred when it held otherwise.

Search Warrants Nos. 13665, 12505 and 17105

Search warrant no. 13665 was executed at the Bagley residence on March 30, 1989. The warrant was issued for items described as follows: “Examination and Inspection of the Electrical system, Photographs, Shelf and cardboard box that was in the Bathroom on the Shelf.” The affidavit of probable cause, which was incorporated by reference into the warrant, recited that the Commonwealth was requesting the warrant to be issued to authorize police “TO SEARCH THE BATHROOM, MASTER BEDROOM AND ADJACENT AREAS FOR THE TYPE OF ELECTRICAL SERVICE LOCATED IN THESE AREAS INCLUDING, INTER ALIA: BEING WALL OUTLETS, WALL SWITCHES, WIRING, CIRCUIT BREAKERS AND VOLTAGE OR ELECTRICAL CURRENT.” The inventory recites the items seized as follows: (1) one duplex receptacle; (2) tape wrapped around receptacle; (3) one 20 amp circuit breaker; (4) one roll of twenty-four photographs taken of the scene; and (5) one videotape of the scene. Subsequent testing of the receptacle and circuit breaker revealed that both had been in working order and that the circuit breaker had been turned off manually and not by a surge of electricity.
Search warrant no. 12505 was issued for “Wires in Bathroom adjacent to Master Bedroom for inspection & testing. Address book of decedent, or letters to or from the decedent, a diary of the decedent, or other materials providing names and addresses of relatives or persons close to the decedent____” This warrant was executed on April 12, 1989, and the following items of evidence were seized: (1) two outlets from bathroom; (2) exposed wires from bath *207 room light fixtures; (3) one letter found in kitchen dated 4/4/89 signed Charles Bagley; (4) one envelope found in Kitchen-Selective Insurance, New Jersey; (5) one telephone bill dated 3/21/89 found in kitchen; (6) airplane baggage claim tickets for Pan Am # 822635; (7) paper with passport information and business card for travel agency; (8) address book found in living room; (9) Century 21 name tag from John Matthews, Inc. Realtors; (10) note from front door of residence from Sonja White; (11) various phone numbers and addresses; (12) letter from Honeywell Protection Services to Charles Bagley; and (13) letter from Bar-clays Bank in England dated 3/13/89.
Finally, search warrant no. 17105 was issued on the basis of an affidavit which requested a warrant “FOR THE PURPOSE OF TESTING THE ORIGINAL CIRCUIT, OUTLET, HOT TUB, WITH THE SAME CIRCUMSTANCES RELATING TO THE DEATH OF YVONNE BAGLEY.” The warrant named the items to be seized as follows: “To recreate and Duplicate and Reconstruct the same circumstances of the Death of Yvonne Bagley as it related to the electrical supply in the residence on the evening of her Death. The use by her of the Jacuzzi (hot tub).” Pursuant to this warrant, an expert hired by the Commonwealth simulated the events of March 26, 1989, as described by appellee, in order to determine whether Yvonne Bagley’s death could have been caused by electrocution. Following this simulation, the expert formed an opinion that “Yvonne Bagley did not and could not have sustained either a lethal shock or an incapacitating shock due to an accidental contact with an intact soldering gun as Charles Bagley has claimed.” The expert’s testing led him to the further conclusion that the type of soldering gun to which appellee had attributed his wife's death “is incapable of producing a lethal or incapacitating shock to a human subject who makes direct or indirect contact with the soldering gun while it is plugged into an operating electrical outlet and while the subject is bathing in a bathtub.”
*208 The suppression court, in suppressing evidence seized and information obtained pursuant to these warrants, concluded that the warrants had been issued for improper and unauthorized purposes. The court reasoned as follows:
Neither the examination, inspection and testing of an electrical system nor the recreation and duplication of circumstances surrounding a victim’s death qualifies under any of the purposes authorized by Rule 2002. A search warrant serves to authorize the seizure of identifiable and existing property. It is not available as a general investigatory tool to be used in place of a grand jury. In re Casale, 512 Pa. 548, 517 A.2d 1260 (1986). Accordingly, we conclude that any evidence obtained pursuant to warrants 12505, 13665 and 17105 as the result of examination, inspection and testing of the electrical system at the Bagley residence or the recreation of the events surrounding the death of Yvonne Bagley must be suppressed.
Pursuant to warrant No. 13665, the police also took twenty-four photographs of the Bagley residence and a videotape of the scene. These items likewise are not authorized under the purposes set forth in Rule 2002 and also must be suppressed. Furthermore, the inventory receipt for warrant No. 13665 shows that a duplex receptacle, tape wrapped around the receptacle and a “20 amp circuit breaker” were seized from the Bagley residence. A reading of the warrant application shows, however, that the identification of items to be searched for and seized states the following, “Examination and inspection of the electrical system, photographs, shelf and cardboard box that was in the Bathroom on the shelf.” The warrant application does not seek the seizure of any portions of the electrical system of the house. Accordingly, the seizure of the receptacle, tape and circuit breaker were not authorized by the warrant and these items also must be suppressed.
The Commonwealth argues on appeal that this reasoning was erroneous and that the warrants were properly issued *209 under Pa.R.Crim.P. 2002(c) for property which constituted evidence of the commission of a criminal offense.[2]
Prior to the issuance of these search warrants the police had information which contradicted appellee’s statement that his wife had died as a result of an accidental electrocution. The medical examiner, following an autopsy, concluded that the cause of Mrs. Bagley’s death was homicide by drowning. This, together with additional information set forth in the affidavits of probable cause, provided probable cause for the issuance of search warrants nos. 13665, 12505 and 17105.
The purpose for the issuance of the warrants was to obtain evidence of the commission of a crime, pursuant to Pa.R.Crim.P. 2002(c), by confirming that Mrs. Bagley’s death had not been caused by accidental electrocution. The electrical system at the Bagley residence constituted identifiable and existing property which was properly the object of a search warrant. The electrical system was described adequately as being that servicing the area of the master bedroom and bathroom. This was sufficient to preclude an unnecessarily broad roaming of the house by police.
The federal courts have interpreted the Fourth Amendment and Fed.R.Crim.P. 41,[3] which is similar to Pa. *210 R.Crim.P. 2002, to permit search warrants which authorize the seizure of intangible evidence. See: Michigan Bell Telephone Co. v. United States, 565 F.2d 385, 389 (6th Cir.1977). See also: United States v. New York Telephone Co., 434 U.S. 159, 168-170, 98 S.Ct. 364, 370-371, 54 L.Ed.2d 376, 387-388 (1977); United States v. Mesa-Rincon, 911 F.2d 1433, 1436 (10th Cir.1990); United States v. Torres, 751 F.2d 875, 877-878 (7th Cir.1984), cert. denied, 470 U.S. 1087, 105 S.Ct. 1853, 85 L.Ed.2d 150 (1985). In United States v. Villegas, 899 F.2d 1324 (2d Cir.1990), cert. denied, — U.S.-, 111 S.Ct. 535, 112 L.Ed.2d 545 (1990), the Court of Appeals for the Second Circuit held that a search warrant had been issued properly for the purpose of surreptitiously entering a premises and photographing therein a suspected cocaine manufacturing operation. In rejecting the argument that search warrants may only authorize the seizure of tangible evidence, the Second Circuit reasoned:
First, we note that Rule 41 does not define the extent of the court’s power to issue a search warrant. Obviously the Fourth Amendment long antedated the Federal Rules of Criminal Procedure, which were first adopted in 1944. Given the Fourth Amendment’s warrant requirements, and assuming no statutory prohibition, the courts must be deemed to have inherent power to issue a warrant when the requirements of that Amendment are met. See, e.g., United States v. Torres, 751 F.2d 875, 877-79 (7th Cir.1984), cert. denied, 470 U.S. 1087, 105 S.Ct. 1853, 85 L.Ed.2d 150 (1985); Application of the United States of America In the Matter of an Order Authorizing the Use of a Pen Register, 538 F.2d 956, 959 (2d Cir.1976), rev’d on other grounds sub nom. United States v. New York Telephone Co., 434 U.S. 159, 164, 168, 98 S.Ct. 364, 368, 370, 54 L.Ed.2d 376 (1977) (“The Court of Appeals ... concluded that district courts have the power, either *211 inherently or as a logical derivative of Fed.Crim.Proc. 41, to authorize pen register surveillance upon an adequate showing of probable cause.” “We ... agree with the Court of Appeals that the District Court had power to authorize the installation of the pen registers.”); United States v. Southwestern Bell Telephone Co., 546 F.2d 243, 245-46 (8th Cir.1976), cert. denied, 434 U.S. 1008, 98 S.Ct. 716, 54 L.Ed.2d 750 (1978); cf. United States v. Giordano, 416 U.S. 505, 554, 94 S.Ct. 1820, 1845, 40 L.Ed.2d 341 (1974) (Powell, J., concurring in part and dissenting in part) (permissibility of search device not regulated by statute “depends entirely on compliance with the constitutional requirements of the Fourth Amendment”).
Second, though Rule 41 expressly mentions only “documents, books, papers and any other tangible objects,” it is clear that both the Rule and the Fourth Amendment extend to searches for and seizures of intangibles as well. See United States v. New York Telephone Co., 434 U.S. 159, 98 S.Ct. 364, 54 L.Ed.2d 376 (1977). In New York Telephone, the Court considered a warrant authorizing the use of pen registers that would disclose numbers called from a given telephone line. The Court rejected the contention that a warrant could not lawfully authorize a search for such intangibles, stating that “Rule 41 is not limited to tangible items but is sufficiently flexible to include within its scope electronic intrusions authorized upon a finding of probable cause.” Id. at 169, 98 S.Ct. at 370. It noted that what is seized in such an endeavor is information, finding that the above-quoted language of Rule 41(b) was
broad enough to encompass a “search” designed to ascertain the use which is being made of a telephone suspected of being employed as a means of facilitating a criminal venture and the “seizure” of evidence which the “search” of the telephone produces. Although Rule 41(h) defines property “to include documents, books, papers and any other tangible objects,” it does *212 not restrict or purport to exhaustively enumerate all the items which may be seized pursuant to Rule 41.
Id. (footnote omitted).
The seizure of intangible evidence has been explored principally in the context of the interception of conversations. See, e.g., Silverman v. United States, 365 U.S. 505, 511, 81 S.Ct. 679, 682, 5 L.Ed.2d 734 (1961) (conversations overheard by means of microphone touching heating duct); Katz v. United States, 389 U.S. 347, 353, 88 S.Ct. 507, 512, 19 L.Ed.2d 576 (1967) (telephone conversations overheard by means of listening device attached to outside of public telephone booth); Berger v. New York, 388 U.S. 41, 54-60, 87 S.Ct. 1873, 1881-84, 18 L.Ed.2d 1040 (1967) (conversations intercepted by wiretap). The principle that neither Rule 41 nor the Fourth Amendment prohibits seizure of intangible property has been applied by the Supreme Court to uphold the interception of nonverbal auditory information, such as that gained through the use of pen registers, see United States v. New York Telephone Co., 434 U.S. at 169-70, 98 S.Ct. at 370-71, and that gained through the placement of location-monitoring beepers in movable property, see United States v. Knotts, 460 U.S. 276, 285, 103 S.Ct. 1081, 1087, 75 L.Ed.2d 55 (1983); see also United States v. Karo, 468 U.S. 705, 715, 104 S.Ct. 3296, 3303, 82 L.Ed.2d 530 (1984) (beeper).
This principle has also been applied by this Court to uphold a warrant authorizing the gathering of visual information through the use of a video camera. See United States v. Biasucci, 786 F.2d 504, 509 (2d Cir.), cert. denied, 479 U.S. 827, 107 S.Ct. 104, 93 L.Ed.2d 54 (1986); accord United States v. Torres, 751 F.2d at 883 (upholding warrant authorizing television surveillance of “safe house”); see also United States v. Taborda, 635 F.2d 131, 139 (2d Cir.1980) (warrant required for viewing of private area through telescope).
Given these authorities, we reject Villegas’s contention that the district court had no power to issue a search warrant pursuant to which only intangible evidence would
*213 be seized. Accord United States v. Freitas, 800 F.2d 1451, 1455 (9th Cir.1986) (ruling that search-without-physical-seizure warrant was authorized, though not validly issued because it (1) failed to make any provision for notice, and (2) lacked particularity as to the intangible property to be seized); see also United States v. Freitas, 856 F.2d 1425, 1433 (9th Cir.1988).
United States v. Villegas, supra at 1334-1335.
Applying the same rationale to the unusual facts of the instant case, we hold that the suppression court erred when it determined that Pa.R.Crim.P. 2002 did not permit the issuance of a search warrant authorizing police to enter the Bagley residence to conduct inspections and testing, to recreate certain events, and to take photographs or videotape things located therein. The rule permits a warrant to be issued for the taking of photographs and the testing of physical evidence in the home. Therefore, the court erred when it suppressed evidence obtained pursuant to these warrants; and that portion of its order must be reversed.
The suppression court also suppressed the receptacle, the tape wrapped around the receptacle and the circuit breaker which had been physically seized by police during the execution of search warrant no. 13665. The court reasoned that the warrant had not authorized police to seize any physical evidence and only permitted inspection and testing. Reading the warrant in a common sense and non-technical manner, however, suggests that the electrical system of the house was identified by the warrant as the evidence to be seized. Although it would not have been practical for police to seize the entire electrical system of the Bagley home, such things as a receptacle and circuit breaker could reasonably be the subject of seizure pursuant to warrant. While it is true that the warrant itself identified the evidence to be searched for and seized as “Examination and Inspection of the Electrical System,” the affidavit of probable cause, which was incorporated by reference and attached to the warrant, specifically listed as objects of the search the wall outlets and circuit breakers associated *214 with the electrical supply to the master bedroom and bathroom of the Bagley house. Thus, although the warrant may have been awkwardly worded, it provided police with authority to seize specific portions of the electrical system which had been identified therein. Even where the description of things to be searched for and seized by the warrant is defective, suppression will not be required where an adequate description is contained in the affidavit of probable cause and the affidavit has been incorporated by reference and is attached to the warrant. See: United States v. Johnson, 690 F.2d 60, 64-65 (3d Cir.1982), cert. denied, 459 U.S. 1214, 103 S.Ct. 1212, 75 L.Ed.2d 450 (1983). See also: United States v. Washington, 852 F.2d 803, 805 (4th Cir. 1988), cert. denied, 488 U.S. 974, 109 S.Ct. 512, 102 L.Ed.2d 547 (1988); United States v. Leary, 846 F.2d 592, 603 (10th Cir.1988); United States v. Weinstein, 762 F.2d 1522, 1531-1532 (11th Cir. 1985), cert. denied, 475 U.S. 1110, 106 S.Ct. 1519, 89 L.Ed.2d 917 (1986).
Finally, pursuant to search warrant no. 12505, the police seized letters and other documents from the Bagley home. The suppression court held that these items were not evidence of a crime and, therefore, could not be seized pursuant to the warrant. The court reasoned as follows:
Pursuant to warrant No. 12505, the police also seized various letters, envelopes, telephone bills, a baggage claim check, a name tag, notes, an address book and papers with various phone numbers from the Bagley residence. A review of the affidavit of probable cause submitted in support of the application for this warrant shows that none of these items constituted contraband, fruits of a crime, things criminally possessed, property used as the means of committing a criminal offense or property constituting evidence of the commission of a criminal offense. Instead, seizure of these items was sought "... to determine those individuals who were likely to be the closest friends of the decedent ...” Under Rule 2002, a search warrant may not be issued for such *215 broad investigatory purposes, and the items seized pursuant to warrant No. 12505 must be suppressed.
We agree with the suppression court that the documentary evidence seized pursuant to search warrant no. 12505 did not constitute evidence of the commission of a crime. Indeed, the affidavit of probable cause stated that police were seeking the documentary evidence named in the warrant because, during their investigation, they had been unable to determine the identity of Mrs. Bagley’s closest friends. The failure to identify the victim’s closest friends, however, did not provide police with probable cause to believe that the sought after documents were in any way connected to the murder of Mrs. Bagley. Moreover, although the warrant specified documents addressed to or by Mrs. Bagley, police also seized items addressed to appellee. These were not within the scope of the warrant. For these reasons, we affirm that part of the suppression court’s order which excluded documentary evidence seized pursuant to search warrant no. 12505.
Our conclusion that some of the evidence seized pursuant to search warrant no. 12505 was properly suppressed does not prevent our reversing the order suppressing evidence pertaining to the electrical system. The doctrine of severance mandates that invalid portions of a search warrant may be stricken and the remaining portions held valid, as long as the remaining portions of the warrant describe with particularity the evidence to be seized. See: United States v. Spilotro, 800 F.2d 959, 967-968 (9th Cir. 1986); United States v. Gomez-Soto, 723 F.2d 649, 654 (9th Cir.1984), cert. denied, 466 U.S. 977, 104 S.Ct. 2360, 80 L.Ed.2d 831 (1984). See also: United States v. Cardwell, 680 F.2d 75, 78 (9th Cir.1982); Commonwealth v. Casuccio, 308 Pa.Super. 450, 467-468, 454 A.2d 621, 629-630 (1982); Aday v. Superior Court, 55 Cal.2d 789, 796-98, 13 Cal. Rptr. 415, 420, 362 P.2d 47, 52 (1961). Where a search warrant authorizes seizure of some items for which there is probable cause and other items for which there is no probable cause, the warrant is not wholly invalid. In such cases, *216 suppression will be required only of the evidence which was seized without probable cause. See: United States v. Diaz, 841 F.2d 1, 4 (1st Cir.1988); United States v. Freeman, 685 F.2d 942, 952-953 (5th Cir.1982). See also: United States v. Riggs, 690 F.2d 298, 300-301 (1st Cir.1982); United States v. Christine, 687 F.2d 749, 758-760 (3d Cir.1982). Instantly, search warrant no. 12505 was based on probable cause to examine the electrical system, which was particularly described as the object of the search. Therefore, the evidence obtained with respect to the electrical system is not subject to suppression merely because the warrant also authorized a search for documents without a showing of probable cause therefor.
To summarize, we hold that evidence seized from the Bagley home on March 26, 1989 was lawfully obtained by police pursuant to appellee’s voluntary consent, even though search warrant no. 12504 was invalid. We hold also that the evidence obtained by police via inspection and testing of the electrical system, recreation of appellee’s version of his wife’s death, and the taking of photographs and videotape of the bathroom and master bedroom areas of the Bagley house, as well as the physical seizure of specified portions of the electrical system, were properly authorized by search warrants nos. 13665, 12505 and 17105. Insofar as the suppression court ordered this evidence excluded, therefore, its order must be reversed. Insofar as the court suppressed documentary evidence seized without probable cause pursuant to warrant no. 12505, however, its order must be affirmed.
Order reversed in part, affirmed in part and remanded for further proceedings consistent with the foregoing Opinion. Jurisdiction is not retained.
KELLY, J., files a concurring opinion.

. Appellee has not sought to suppress this statement.

. Pa.R.Crim.P. 2002 is as follows:
Rule 2002. Purpose of Warrant
A search warrant may be issued to search for and to seize:
(a) contraband, the fruits of a crime, or things otherwise criminally possessed; or
(b) property which is or has been used as the means of committing a criminal offense; or
(c) property which constitutes evidence of the commission of a criminal offense.

. Fed.R.Crim.P. 41 provides in relevant part:
(b) Property or Persons Which May Be Seized with a Warrant.
A warrant may be issued under this rule to search for and seize any (1) property that constitutes evidence of the commission of a crimnal offense; or (2) contraband, the fruits of crime, or things otherwise criminally possessed; or (3) property designed or intended for use or which is or has been used as the means of committing a criminal offense; or (4) person for whose arrest there is probable cause, or who is unlawfully restrained.
*210 (h) Scope and Definition____ The term "property” is used in this rule to include documents, books, papers and any other tangible objects.
Fed.R.Crim.P. 41(b) and (h).