J-S24003-19
J-S24004-19
J-S24005-19
J-S24006-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| OMAR A. RAHMAN | : | |
| | : | |
| Appellant | : | No. 3556 EDA 2017 |

Appeal from the Judgment of Sentence May 17, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0012044-2013

\*\*\*\*\*

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| OMAR A. RAHMAN | : | |
| | : | |
| Appellant | : | No. 3588 EDA 2017 |

Appeal from the Judgment of Sentence May 17, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0009988-2013

\*\*\*\*\*

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |

J-S24003-19
J-S24004-19
J-S24005-19
J-S24006-19

OMAR A. RAHMAN

Appellant

:
:
:
:
:
:

No. 3589 EDA 2017

Appeal from the Judgment of Sentence May 17, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0013648-2013

*****

COMMONWEALTH OF PENNSYLVANIA

v.

OMAR A. RAHMAN

Appellant

:
:
:
:
:
:
:
:
:
:
:

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 3748 EDA 2017

Appeal from the Judgment of Sentence May 17, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0010006-2013

BEFORE:   LAZARUS, J., McLAUGHLIN, J., and STEVENS[*], P.J.E.

MEMORANDUM BY LAZARUS, J.:                         **FILED JULY 01, 2019**

Omar A. Rahman appeals from the judgments of sentence, entered in

the Court of Common Pleas of Philadelphia County, after he was convicted by

_____

[*] Former Justice specially assigned to the Superior Court.

- 2 -

a jury of four counts each of robbery[1] and possessing an instrument of crime[2]

(PIC).[3] After careful review, we affirm.

The instant appeals concern a series gunpoint robberies Rahman committed during the summer of 2013, beginning with the robbery of Krystal Cruz. On June 26, 2013, Rahman approached Cruz on the 3100 block of Emerald Street, pointed a revolver at her stomach, and demanded money. Cruz gave Rahman $10. Rahman grabbed Cruz's phone and fled. Cruz went to her house and used her home phone to call 911. When the police arrived, she described her assailant as a tall, light-skinned man with dreadlocks.

On June 27, 2013, Rahman approached Jarrett Natson on the 5800 block of Washington Avenue, pointed a silver revolver in Natson's face, ordered him

_____

[1] 18 Pa.C.S.A. § 3701(a)(1)(ii).

[2] 18 Pa.C.S.A. § 907.

[3] On December 14, 2016, following a trial consolidating charges filed under five docket numbers, the jury convicted Rahman of a total of six counts of robbery and five counts of PIC. Rahman filed separate notices of appeal under each docket number in compliance with **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018). Four of those appeals—namely those docketed under 3556 EDA 2017, 3748 EDA 2017, 3588 EDA 2017, and 3589 EDA 2017—are presently before this Court, and we consolidate these interrelated matters pursuant to Pa.R.A.P. 513. Rahman's fifth appeal, docketed under 2550 EDA 2018, concerns two robbery convictions and one PIC conviction. It is not before the instant panel because of procedural delays and will be considered at a later date. **See** Per Curiam Order, 4/29/19, at 1–2.

to the ground, and took his belongings.  Natson described his assailant as a man in a hooded sweatshirt, with an exposed face and dreadlocks.

On July 19, 2013, Rahman approached Aaron Slaughter and Raheem Baynes on the 1200 block of South 58th Street, pointed a silver revolver at them, and ordered them to the ground.[4]  Rahman took their phones, wallets, and a duffle bag.  Soon afterwards, Slaughter used a second cell phone to call the police.  Contemporaneously, Slaughter's friend "Michael"[5] drove by and attempted to locate the perpetrator.  Michael saw someone drive away, and relayed the car's New Jersey license plate number to Slaughter.  Slaughter, in turn, passed this information along to the police, and described the perpetrator as a light-skinned man with dreadlocks.

On July 20, 2013, Rahman approached Everal Laing on the 6000 block of Jefferson Street, held a silver revolver to his head, ordered him to his knees, and demanded money.  Rahman took Laing's phone, money, and a bag containing some paperwork and clothing.  When Rahman demanded money, Liang asked for his bag back so he could locate his money for Rahman.  Liang instead took his wallet out of the bag and ran to a nearby police station, where

---

[4] The robbery of Slaughter and Baynes forms the factual basis for Rahman's convictions under docket number 2550 EDA 2018, which is not currently before us.  We have recounted the incident here insofar as it is relevant to Rahman's suppression hearing and subsequent trial.

[5] Slaughter stated he did not know Michael's last name.  N.T. Trial, 12/8/16, at 73.

he reported the robbery and described the perpetrator as a man with a light complexion, wearing his hair in braids or dreadlocks.

On July 21, 2013, Rahman approached Kyle Stanley on the 1500 block of West Allegheny Avenue, pointed a revolver at his temple, ordered him to the ground, and took his watch, money, and phone. Contemporaneously, Officers Donyul Williams and Ronald Gilbert drove by in a Ford Crown Victoria. Recognizing the Crown Victoria as an unmarked police vehicle, Stanley began physically struggling with Rahman and yelling for help, stating Rahman was armed. When Officer Williams approached the fracas, Rahman disengaged from Stanley and fled. Stanley told Officer Williams that Rahman attempted to rob him at gunpoint. Rahman fled on foot, ignoring Officer Williams' demands to stop, only pausing to duck down by a parked minivan. The police caught up with Rahman and detained him. The officers proceeded to search for the gun described by Stanley and located a silver revolver[6] in the wheel well of the minivan where Officer Williams observed Rahman stop and duck down. The police, however, did not recover the items Rahman took from Stanley.

After apprehending Rahman, the officers returned to their vehicle. The officers then noticed a woman sitting in a parked car that was stuck behind

---

[6] Officer Gregory Welsch later determined the revolver to be an operable Smith & Wesson, Model 638 revolver. N.T. Trial, 12/12/16, at 67.

the officer's hastily parked police cruiser. Officer Williams began questioning her, thinking she might have been a witness. The woman identified Rahman as her boyfriend. Officer Williams then noticed an iPad and several phones in the front of the car. Rahman was arrested and officers secured the vehicle, a Hundai Elantra ("the Elantra") with New Jersey plates. The police applied for and received a search warrant for the Elantra, pursuant to which they seized eleven phones, an iPad Mini, and various documents, including Liang's bank statement and Rahman's driver's license.

These items helped lead police to the above-named victims. One cell phone led detectives to Cruz, who identified Rahman in an eight-person photo array as the individual who robbed her at gunpoint. Detectives questioned Laing after discovering his bank statement during the search of the Elantra. Liang identified the bank statement as his. He was then shown an eight-person photo array and identified Rahman as the man who robbed him. Another cell phone led police to Natson, who was unable to make a positive identification of the perpetrator from an eight-person photo array. He was, however, able to identify his phone as the one taken from him during the June 27, 2013 robbery. Natson subsequently attended an in-person lineup and identified Rahman as the man who robbed him. The police located Slaughter after searching for reports of gunpoint robberies committed by an individual with dreadlocks using a silver revolver during late June and July of 2013.

Slaughter subsequently identified Rahman as his assailant from a photo array provided by detectives.

On October 31, 2016, Rahman, proceeding *pro se* with Jason Javi, Esquire, as backup counsel, litigated a motion *in limine* to preclude the mention of any physical evidence recovered from the Elantra that was not explicitly connected to a charged crime. The Commonwealth argued all items recovered pursuant to the search warrant were admissible to explain the course of the investigation, and that to exclude certain cherry-picked items would confuse jurors. The court denied Rahman's motion.

On October 31, 2016, and December 6, 2016, Rahman litigated two motions to suppress. First, he argued for the suppression of all physical evidence from the Elantra, offering the testimony of Wayne Dumas to prove he had permission to use the Elantra, and alleging the affidavit of probable cause was facially insufficient. Second, Rahman moved to suppress the identification evidence provided by Cruz, Slaughter, Laing, and Natson, arguing he was denied the right to counsel during the identification procedures, and that both the photo and in-person line-ups were unduly suggestive.[7]

---

[7] Rahman only challenges the validity of the photo-array identifications on appeal. *See* Brief of Appellant, at 29–41.

- 7 -

On December 6, 2016, the court denied both motions. With respect to the search of the Elantra, the court made the following findings: 1) Wayne Dumas lacked credibility; 2) Rahman lacked a reasonable expectation of privacy in the Elantra; 3) Rahman lacked a reasonable expectation of privacy in the phones recovered from the Elantra; 4) there was probable cause to search the Elantra; and 5) there was no evidence indicating the warrant was defective. N.T. Motions Hearing, 12/6/16, at 94–99. With respect to the photo-array identifications, the court made the following findings: 1) detectives involved in the identifications testified credibly; 2) there was no evidence of any suggestive procedures used in the identifications; and 3) the defendant did not have a right to counsel with respect to the challenged identifications. N.T. Motions Hearing, 12/6/16, at 202–203.

On December 14, 2016, following a seven-day trial, a jury found Rahman guilty of six counts of robbery and five counts of PIC. On May 17, 2017,[8] the Honorable Giovanni J. Campbell sentenced Rahman to four to eight years' incarceration for each robbery conviction and one to five years' incarceration for each PIC conviction. The court imposed the robbery sentences consecutive to one another, and the PIC sentences consecutive to

_____

[8] The five-month delay between conviction and sentencing was the result of the court requesting a pre-sentence investigation and a mental health evaluation, and Rahman requesting continuances.

- 8 -

the robbery sentences but concurrent to one another, for an aggregate sentence of twenty five to fifty three years' incarceration.

On May 26, 2017, appointed counsel filed post-sentence motions on behalf of Rahman. On June 16, 2017, Rahman filed *pro se* notices of appeal, which were quashed by this Court as interlocutory because post-sentence motions had yet to be ruled upon. On September 11, 2017, Rahman, acting *pro se*, filed motions to withdraw the post-sentence motions filed under four of the five docket numbers. On September 26, 2017, the trial court denied the post-sentence motion on CP-51-CR-0010006-2013 and dismissed the remaining post-sentence motions as erroneously docketed. On October 24, 2017, Rahman filed notices of appeal *pro se*. On December 6, 2017, Rahman complied with the court's order to file a Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(b). This Court remanded the matter on December 13, 2017 for a **Grazier** hearing, which the trial court held on February 5, 2018. Rahman was granted leave to proceed *pro se* on appeal with appointed counsel as backup. Rahman's appeal is now ripe for disposition.[9]

_____

[9] The Commonwealth, without explanation, failed to file a brief by the March 29, 2019 deadline. In response, Rahman filed a motion for relief requesting this court "accept as fact all assertions made by Appellant in favor of reversal." Application for Relief, 4/15/19, at 2–3. His motion rests on inapposite

Rahman raises the following issues for our review:

1) Whether the trial court erred in denying the motion to suppress physical evidence as [] Rahman established his privacy interest in the vehicle and the items recovered, the search warrant was issued in violation of the Pennsylvania and United States Constitution[s], law enforcement used the warrant as a general investigatory tool[,] and none of the proceeds recovered pertained to the robbery of Kyle Stanley?

2) Whether the trial court erred in denying the motion to suppress the identification evidence of Everal Laing and Krystal Cruz as the procedure utilized by law enforcement was unduly suggestive and law enforcement violated [] Rahman's right to counsel afforded by the Pennsylvania and United States Constitutions?

3) Whether the trial court erred in denying the motion for a new trial as the verdict was against the manifest weight of the evidence with respect to victim Kyle Stanley[,] as none of the victim's

_____

application of **Commonwealth v. Atanasio**, 997 A.2d 1181, 1183 n.6 (Pa. Super. 2010). The text from **Atanasio** cited by Rahman states, in the event the Commonwealth fails to file a brief, "we must accept *as undisputed* the statement of questions involved and the statement of the case presented by the appellant." **Atanasio**, **supra** at 1183 n.6 (emphasis added). That language does not stand for the proposition that we must accept the assertions in Rahman's brief as fact. As such, we deny his motion for relief.

We do, however, grant Rahman's motion to strike filed after the Commonwealth untimely submitted its brief on April 29, 2019, without this Court's authorization. **See** Motion to Strike, 5/13/19, at 1–2; **see also Commonwealth v. Brown**, 161 A.3d 960, 964 n.2 (Pa. Super. 2017) (declining consideration of arguments advanced in untimely Commonwealth brief). In doing so, we note our mounting frustration at the regularity with which the Philadelphia District Attorney's Office files untimely briefs, even after being given multiple extensions or failing to request extensions. **See, e.g.**, **Commonwealth v. Kinard**, 1645 EDA 2018, at 1 n.1 (Pa. Super. May 8, 2019) (filing brief 46 days after *third* deadline extension).

property was ever recovered[,] notwithstanding the fact that []
Rahman was arrested on the scene of the offense?

4) Whether the trial court erred in denying the motion *in limine* to
exclude irrelevant and prejudicial items on property receipt
[numbers] 3116317 and 3116318[10] as the items were not
evidence of any wrongdoing, and were admitted in[to] evidence
in order to allow the jury to draw the improper inference that they
were evidence of additional wrongdoing and thus prejudiced []
Rahman?

5) Whether the trial court erred in admitting in[to] evidence the [out-
of-court] statement of Raheem Baynes while the
[C]ommonwealth never called [] Baynes as a witness?

6) Whether the trial court erred in denying [] Rahman the right to
present a defense afforded by the Pennsylvania and United States
Constitutions by excluding the testimony of Joseph Kmetz,
Maurine Treston, Kevin Boston, Aerni Dunlap, Officer Ruggia,[11]
Detective Joseph Marano, Detective Daniel Murawski, and
Detective John Druding?

Brief of Appellant at 4–6.

Rahman's first two claims concern the denial of his motions to suppress

physical and identification evidence. Our well-settled standard of review

regarding these arguments is as follows:

[An appellate court's] standard of review in addressing a challenge
to the denial of a suppression motion is limited to determining
whether the suppression court's factual findings are supported by
the record and whether the legal conclusions drawn from those
facts are correct. Because the Commonwealth prevailed before
the suppression court, we may consider only the evidence of the

_____

[10] Property receipts 3116317 and 3116318 detail the items seized from the
Elantra.

[11] We were unable to determine Officer Ruggia's first name.

Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [ ] plenary review.

*Commonwealth v. Jones*, 998 A.2d 649, 654 (Pa. 2010) (Internal citations and quotation marks omitted).

Rahman's first claim is more properly characterized as three separate challenges to the search of the Elantra. *See* Brief of Appellant, at 20–28. First, he avers the police included material misstatements in their affidavit of probable cause. *Id.* Second, he claims these material misstatements resulted in a search warrant that was unsupported by probable cause. *Id.* Lastly, Rahman claims the warrant was overbroad and lacking in particularity. *Id.* We address each aspect of his argument in turn.[12]

---

[12] Rahman also contends the United States Supreme Court's holding in *Byrd v. United States*, 138 S.Ct. 1518 (2018) rendered untenable the suppression court's finding that Rahman lacked a reasonable expectation of privacy in the Elantra. *Byrd* held the fact "that a driver in *lawful* possession or control of a rental car is not listed on the rental agreement will not defeat his or her otherwise reasonable expectation of privacy." *Byrd*, *supra* at 1531 (emphasis added).

- 12 -

Rahman first argues the affidavit of probable cause contained the "deliberate material misstatement . . . that numerous cell phones were observed by the arresting officers in plain view and the assertion that the passenger side window of the vehicle was down." *Id.* at 22 (quoting N.T. Motions Hearing 10/31/16, at 44). Rahman asserts his position is proven by photos of the Elantra, submitted with the affidavit probable cause, in which the cell phones are not visible. *Id.* at 23.

"[M]isstatements of fact will invalidate a search warrant and require suppression . . . *only if the misstatements of fact are deliberate and material*." **Commonwealth v. Baker**, 24 A.3d 1006, 1017 (Pa. Super. 2011), *affirmed* 78 A.3d 1044 (Pa. 2013) (emphasis in original). A material fact is one "without which probable cause would not exist." *Id.* at 1018. It is for the suppression court to determine whether such a misstatement was deliberate. *Id.* at 1017.

During the suppression hearing, Officer Williams, one of Rahman's arresting officers, testified to the following: (1) the passenger side window of

---

Nothing in the record supports the assertion that Rahman *lawfully* possessed the Elantra. **See N.T.** Motions Hearing, 10/31/16, at 54–58 (stating Dumas exchanged white Hundai Sonata rented from Hertz—not an Elantra—for a blue Chevrolet on June 30, 2013, well before Rahman's July 21, 2013 arrest); **see also Commonwealth v. Enimpah**, 106 A.3d 695, 699 (Pa. 2014) (requiring defendant to demonstrate reasonable expectation of privacy). Moreover, we feel compelled to consider the merits of the warrant as the police made the effort to protect the constitutionality of their actions. **See Commonwealth v. Leed**, 186 A.3d 405, 413 (Pa. 2018) (reiterating constitutional preference for searches conducted pursuant to warrants).

- 13 -

the Elantra was open when officers approached it; (2) multiple cell phones and a tablet were visible in plain view; (3) Officer Williams relayed this information to the detectives who prepared the affidavit of probable cause; and (4) the Elantra was secured, but not searched, before obtaining a warrant. N.T. Motions Hearing, 12/6/16, at 24–27. Based on the evidence presented, Judge Campbell did not find any material misstatements contained in the affidavit of probable cause, specifically noting he found "the testimony of Wayne Dumas not credible, the testimony of [Rahman] not credible, and the testimony of all other officers credible." *Id.* at 99.

We are not free to revisit the suppression court's credibility determinations. *See Commonwealth v. Gallagher*, 896 A.2d 583, 585 (Pa. Super. 2006) ("It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony."). As the suppression court credited Officer Williams' testimony— testimony which directly contradicts Rahman's assertions—we cannot find Officer Williams made any misstatements of fact to the affiant, let alone deliberate misstatements which would undermine the existence of probable cause. *See Baker*, *supra* at 1017. It certainly seems plausible that the phones simply were not visible at the angle from which the photos were taken. Consequently, we find the court's findings are supported by the record and free of legal error. *Jones*, *supra* at 654.

We, therefore, proceed to consider whether the search warrant of the Elantra was supported by probable cause. "In determining whether [a] warrant is supported by probable cause, the magistrate may not consider any evidence outside the four corners of the affidavit." **Commonwealth v. Ryerson**, 817 A.2d 510, 513 (Pa. Super. 2003) (citation omitted). The following, well-settled principles apply when reviewing a "four corners" challenge:

> It is the duty of a court reviewing an issuing authority's probable cause determination to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In so doing, the reviewing court must accord deference to the issuing authority's probable cause determination, and must view the information offered to establish probable cause in a common-sense, non-technical manner.
>
> . . . .
>
> Further, a reviewing court is not to conduct a *de novo* review of the issuing authority's probable cause determination, but is simply to determine whether or not there is substantial evidence in the record supporting the decision to issue the warrant.

**Commonwealth v. Green**, 204 A.3d 469, 480 (Pa. Super. 2019) (citing **Commonwealth v. Mistler**, 912 A.2d 1265, 1269 (Pa. 2006)).

In reviewing the magistrate's decision, the suppression court made the following findings:

> [A]mple probable cause justified [] searching the vehicle and the items therein, including, but not limited to, [the] circumstances of the arrest, the police officers' observation of the defendant's conduct, information from complainants, statements of the

- 15 -

> defendant's girlfriend, the observation of the items in plain view,
> et cetera.

N.T. Motions Hearing, 12/6/16, at 96–97. Upon review, we find the assertions contained in the affidavit, accurately summarized by Judge Campbell above, clearly establish "a fair probability that contraband or evidence of a crime" would be found in the Elantra. **Ryerson**, **supra** at 514. Thus, we conclude the decision to issue the warrant was supported by probable cause. **Green**, **supra** at 480.

Having found the affidavit untainted by deliberate misstatements of material fact and supported by probable cause, we now assess the final aspect of Rahman's first argument—whether the warrant violated the particularity requirement of Article I, Section 8 of the Pennsylvania Constitution.

Article I, Section 8 of the Pennsylvania Constitution, in relevant part, provides, "no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be[.]" Pa. Const. Art. 1 § 8. Contained within this clause are two distinct requirements, which we have previously delineated as follows:

> The particularity requirement prohibits a warrant that is not
> particular enough and a warrant that is overbroad. These are two
> separate, though related, issues. A warrant unconstitutional for
> its lack of particularity authorizes a search in terms so ambiguous
> as to allow the executing officers to pick and choose among an
> individual's possessions to find which items to seize[.] A warrant
> unconstitutional for its overbreadth authorizes in clear or specific
> terms the seizure of an entire set of items, or documents, many

of which will prove unrelated to the crime under investigation[.] An overbroad warrant is unconstitutional because it authorizes a general search and seizure.

*Commonwealth v. Bagley*, 596 A.2d 811, 814 (Pa. Super. 1991).

Rahman raises challenges under both aspects of the particularity requirement. Brief of Appellant, 25–28. First, he alleges the warrant lacked sufficient particularity by omitting the specific description of Stanley's cell phone and seeking to seize "cell phones[;]" secondly, he asserts the warrant's use of the phrase "any other evidence pertinent to this investigation" rendered it overbroad. *Id.* (citing *Commonwealth v. McEnany*, 667 A.2d 1143, 1148 (Pa. Super. 1995) and *Bagley*, *supra*).

In assessing the validity of a description contained in a warrant, "a court must initially determine for what items probable cause existed." *Commonwealth v. Rega*, 933 A.2d 997, 1012 (Pa. 2007). To do so, we employ the "totality of the circumstances" analysis, summarized as a "practical, common sense decision whether, given all the circumstances set forth in the affidavit . . . including the veracity and basis of knowledge of persons supplying hearsay information, that there is a fair probability that contraband or evidence of a crime will be found in a particular place." *McEnany*, *supra* at 1147 (quotations omitted).

The court must then measure the sufficiency of the description against those items for which there was probable cause. *Commonwealth v. Rivera*,

816 A.2d 282, 291 (Pa. Super. 2003). "Any unreasonable discrepancy between the items for which there was probable cause and the description in the warrant requires suppression." *Id.* The descriptions, however, are not to be interpreted in a hyper-technical fashion—"where the items to be seized are as precisely identified as the nature of the activity permits . . . the searching officer is only required to describe the general class of the item he is seeking." *Rega*, *supra* at 1012 (Pa. 2007) (quoting *Commonwealth v. Matthews*, 285 A.2d 510 (Pa. 1971) (finding valid warrant which specified "pocket knife" but officers seized "kitchen knife")).

In *Rivera*, *supra*, this Court examined challenges to the lack of particularity and overbreadth of a warrant authorizing police to search a suspected drug dealer's house and seize "[c]ocaine [and] any assets, paraphernalia or other materials related to [the] sale or use of the same." *Rivera*, *supra* at 289. That warrant was based on an affidavit stating that two confidential informants informed police that cocaine was being transported to a suspect's house in a particular vehicle, information later confirmed through a controlled buy. *Id.* at 291–92. This Court determined the warrant was neither overbroad nor lacking in specificity as "there was probable cause to believe cocaine was being possessed and sold by the occupants of the premises" and that searching for "any assets, paraphernalia

- 18 -

or other materials" related to the crime did not render the warrant "a general investigatory tool" proscribed by Article 1, Section 8. *Id.* at 292.

In the instant case, Detective Cremen's affidavit contains the following facts: (1) officers were on the scene as Rahman held Stanley up at gunpoint and took his cell phone, $2600 in cash, and a $1300 watch; (2) before apprehending Rahman, those officers found a gun where they saw Rahman duck down behind a minivan; (3) after apprehending Rahman, officers asked the driver of the Elantra if she had seen anything; (4) the driver identified herself as Rahman's girlfriend; (5) the officers realized Rahman had passed the Elantra, which had its curbside window down; and (6) the officers observed an iPad Mini and at least six cell phones in the Elantra. Affidavit of Probable Cause, at 1.

Because the police witnessed Rahman accost Stanley and head to the Elantra's open window, the totality of the circumstances provide a substantial basis for concluding probable cause existed for suspecting a robbery occurred, that at least one of the items taken was a cell phone, and that the proceeds from the robbery were located in the Elantra. *See Rivera*, *supra* at 289 (finding substantial basis for searching home after police witnessed commission of crime during controlled buy of cocaine). Measuring the sufficiency of the description in the warrant, provided as "proof of ownership, rental agreement, [United States currency], cellphones, apple iPad Mini,

watch, and any other evidence pertinent to this investigation[,]" against those for which probable cause existed, we find the warrant neither overbroad nor lacking in specificity. Affidavit of Probable Cause, at 1 (capitalization adjusted); *see also Rivera*, *supra* at 289 (finding sufficient connection between probable cause and items described as "[c]ocaine [and] any assets, paraphernalia or other materials related to the sale or use of same.").

Rahman's reliance on *McEnany*, *supra* and *Bagley*, *supra* is misplaced. *McEnany* concerned a warrant to search a van and seize "[a]ny trace evidence including, but not limited to: blood, hairs, fibers, glass, paint, and any other contraband or evidence related to this crime [homicide]." *McEnany*, 667 A.2d at 1148. *Bagley* involved a warrant which "stated no crime but suggested only that it had been issued in the investigation of a suspicious death. It authorized police to seize *anything* that *may have* been related to Mrs. Bagley's death." *Bagley*, 596 A.2d at 815 (emphasis original).

In the instant case, police were searching for specific evidence related to a particular robbery. The language "any other evidence" follows language which is directly related to the circumstances surrounding Rahman robbing Stanley and the officer's subsequent observations. Affidavit, at 1; see also *Rivera*, *supra* at 292 (distinguishing *Rivera* from *McEnany* and *Bagley* on grounds that "the language 'or other materials,' . . . follows the specific items 'assets' and 'paraphernalia,' all of which must be related to . . . the sale or use

of cocaine [] crimes for which the police clearly had probable cause to believe had occurred at the residence within 24 to 36 hours preceding execution of the warrant."). Consequently, all three aspects of Rahman's first argument are without merit.

In his second argument, Rahman advances two claims related to the court's denial of his motion to suppress the photo-array identifications made by Laing and Cruz: first, he claims the photo-array procedure used by the police was unduly suggestive; second, he claims the procedure violated his right to counsel under the Pennsylvania and United States Constitutions. Brief of Appellant, at 29. Neither aspect of his claim is meritorious.

"Whether an [out-of-court] identification is to be suppressed as unreliable, and therefore violative of due process, is determined by the totality of the circumstances." *Commonwealth v. Fulmore*, 25 A.3d 340, 346 (Pa. Super. 2011) (citation omitted). Suggestiveness is a factor in determining the admissibility of such evidence, but suggestiveness alone does not warrant exclusion; identification evidence will not be suppressed "unless the facts demonstrate that the identification procedure was so impermissibly suggestive as to give rise a very substantial likelihood of irreparable misidentification." *Id.* (citation omitted). Photograph identifications are valid if "the suspect's picture does not stand out more than the others, and the people depicted all exhibit similar facial characteristics." *Id.*

The suppression court reviewed the police procedures used in Liang's and Cruz's identifications of Rahman, and found "no evidence that there was any suggestivity used in the identifications by any of the complaintants." N.T. Motions Hearing, 12/6/16, at 202–203. Upon review of the record, including the photo arrays at issue, we find no abuse of discretion in the trial court's assessment of the arrays or in its subsequent decision to admit the evidence. *See id.* at 133–35, 169-71 (detailing identifications made by Liang and Cruz, respectively); *see also* Exhibits C-7 and C-8 (showing, respectively, arrays used in identifications by Liang and Cruz).

The second aspect of Rahman's argument concerns the right to counsel during a photo-array identification. Brief of Appellant, at 29–30. Initially, we note no such right exists under the Sixth Amendment to the United States Constitution. *See United States v. Ash*, 413 U.S. 300, 317 (1973) (finding Sixth Amendment does not grant right to counsel during post-indictment photo array for purposes of identifying perpetrator). Moreover, this Court has ruled the right to counsel under Article I, Section 9 of the Pennsylvania Constitution does not attach "when the suspect is in custody for a different offense than that for which the array has been compiled." *Commonwealth v. Blassingale*, 518 A.2d 183, 190 (Pa. Super. 1990).

When the police arrested Rahman on July 21, 2013, Rahman was under arrest for the robbery of Stanley. N.T. Motions Hearing, 12/6/16, at 125–37.

- 22 -

That same day, Liang and Cruz were connected to the case after the police executed the search warrant for the Elantra and discovered mail with Liang's name on it and a cell phone belonging to Cruz. *Id.* at 129–30. However, as the notes of testimony make clear, Rahman had yet to be charged with any crimes beyond the robbery of Stanley at the time that police interviewed either Liang or Cruz. *Id.* ("Q: Now, at this time, is the defendant in custody? A: He's in custody on the robbery from the highway officers, yes. Q: Is he in custody on any other case at this time? A: No."). Accordingly, Rahman possessed no right to counsel, and the court properly denied his motion to suppress. *See Blassingale*, *supra* at 190.

In his third argument, Rahman challenges both the sufficiency of the evidence and the weight of the evidence underpinning his conviction for the robbery of Stanley. Brief of Appellant, at 35. First, Rahman claims the Commonwealth failed to prove beyond a reasonable doubt that Rahman "placed another in fear in the course of a theft." *Id.* at 37. Second, Rahman asserts the police's failure to recover any of Stanley's stolen property rendered Stanley's testimony regarding the robbery incredible and Rahman's conviction against the weight of the evidence. *Id.*

Our standard of review with regard to sufficiency claims is well-settled:

In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light

most favorable to the verdict winner, are sufficient to support all elements of the offense[.] When performing this review, we may not reweigh the evidence or substitute our own judgment for that of the fact finder.

*Commonwealth v. Cox*, 72 A.3d 719, 721 (Pa. Super. 2013) (citation and quotations omitted).

The Crimes Code defines robbery, in relevant part, as follows:

**§ 3701. Robbery**

**(a) Offense defined.--**

(1) A person is guilty of robbery if, in the course of committing a theft he . . .

(ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury[.]

18 Pa.C.S.A. § 3701(a)(1)(ii). The first element, whether the perpetrator was acting "in the course of committing a theft[,]" can be proven by showing the individual unlawfully took "moveable property of another with the intent to deprive him thereof." *Commonwealth v. Ennis*, 574 A.2d 1116, 1119 (Pa. Super. 1990) (quoting 18 Pa.C.S.A. §3921(a)). We have previously explicated proving "fear of serious bodily injury" under section 3701(a)(1)(ii) as follows:

[T]he Commonwealth need not prove a verbal utterance or threat to sustain a conviction under subsection 3701(a)(1)(ii). It is sufficient if the evidence demonstrates aggressive actions that threatened the victim's safety. For the purposes of subsection 3701(a)(1)(ii), the proper focus is on the nature of the threat posed by an assailant and whether he reasonably placed a victim in fear of 'immediate serious bodily injury.' The threat posed by the appearance of a firearm is calculated to inflict fear of deadly

- 24 -

injury, not merely fear of 'serious bodily injury.'  A factfinder is
entitled to infer that a victim was in mortal fear when a defendant
visibly brandished a firearm.

***Commonwealth v. Hopkins***, 747 A.2d 910, 914–15 (Pa. Super. 2000)

(citations omitted).

At trial, Stanley identified Rahman as the individual who approached

him on the street, pointed a revolver at his temple, forced him to the ground,

and demanded he turn over his property.  N.T. Trial, 12/9/16, at 5–9; 19–20.

Stanley testified to hailing down two police officers after turning over his

watch, a cell phone, and cash.  ***Id.*** at 10–12.  One of those officers—Officer

Williams—testified to the circumstances surrounding Rahman's arrest.  ***Id.*** at

121–39.  Officer Williams specifically highlighted the winding path Rahman

took as he fled, heading past both the Elantra and a nearby van, under which

officers located a loaded revolver shortly after Rahman's arrest.  ***Id.***

Rahman's argument, that the Commonwealth failed to prove "both

[that] Rahman committed the gunpoint robbery of Kyle Stanley, and that

Rahman did so by threatening Stanley or intentionally putting him in fear of

immediate bodily injury in the course of committing a theft" flies in the face

of the evidence.  Brief of Appellant, at 40.  Though Rahman correctly states

that the police never recovered Stanley's stolen property, he incorrectly

believes this fact to be dispositive; recovery of stolen property is not an

element of robbery, and thus, is immaterial.  ***See Commonwealth v.***

*Natividad*, 733 A.2d 167, 176 (Pa. 2001) ("A robbery is completed when an attempt is made to take the property of another by force or threat of force. There is no requirement that the robbery be successful.") (*abrogated on other grounds* by *Commonwealth v. Freeman*, 927 A.2d 385 (Pa. 2003)). The police apprehended Rahman immediately after he used a firearm to unlawfully deprive Stanley of his property, thus proving both that Rahman acted in the course of committing a theft, and that he placed Stanley in fear of serious bodily injury. *See Ennis*, *supra*, at 1116; *see also Hopkins*, *supra* at 914–15.

Rahman also challenges the weight of the evidence underpinning his conviction for the robbery of Stanley. This Court reviews the trial court's exercise of discretion in ruling on the weight claim, not the underlying question of whether the verdict was against the weight of the evidence. *Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003). It is not our role, as a reviewing court, to reweigh the evidence and substitute our judgment for that of the fact-finder. *Commonwealth v. Mitchell*, 902 A.2d 430, 449 (Pa. 2006). Where the challenge to the weight of the evidence is predicated on the credibility of trial testimony, our review is extremely limited; unless the evidence is so unreliable "as to make any verdict based thereon pure conjecture, [such claims] are not cognizable on appellate review." *Commonwealth v. Gibbs*, 981 A.2d 274, 282 (Pa. Super. 2009). We may

only grant relief if the lower court's verdict is "so contrary to the evidence as to shock one's sense of justice." ***Champney***, ***supra*** at 408.

Rahman claims the verdict was against the weight of the evidence, as Officer Williams' inability to locate Stanley's stolen property undermined Stanley's allegation that a robbery took place. Brief of Appellant, at 40. We find this assertion unavailing. Not only are we unable to re-evaluate Stanley's credibility, we are unsure whether Rahman's argument even impugns Stanley's credibility. ***See Gibbs***, ***supra*** at 282. As the trial court aptly stated, "the fact of non[-]recovery of the proceeds, does not, as [Rahman] urges, demonstrate that there was no robbery. It just demonstrates that [Rahman] did a better job at secreting or disposing of . . . Stanley's possessions as he walked away than he did in hiding the gun." Rule 1925(a) Opinion, 7/30/18, at 36. Consequently, we cannot say that the trial court abused its discretion by denying Rahman's weight claim. ***Champney***, ***supra*** at 408.

Rahman's fourth, fifth, and sixth arguments all concern decisions to admit or exclude evidence. Brief of Appellant, at 8–9. Consequently, we evaluate these arguments by the following standard:

> When reviewing questions regarding the admissibility of evidence, our standard of review maintains the admissibility of evidence is solely within the discretion of the trial court and will be reversed only if the trial court has abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias,

> prejudice, ill-will or partiality, as shown by the evidence or the record. The comment to Rule 403 of the Pennsylvania Rules of Evidence defines "unfair prejudice" as "a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially."

***Commonwealth v. Seilhamer***, 862 A.2d 1263, 1270 (Pa. Super. 2004) (citations and quotations omitted).

In his fourth argument, Rahman suggests that by admitting evidence of seven cell phones and an iPad Mini[13] without establishing the ownership of those items, the court allowed the jury to consider irrelevant facts that could have led them to conclude the items were stolen. Brief of Appellant, at 42–43.

Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Pa.R.E. 401. Even if relevant, "evidence may be excluded if its probative value is outweighed by the danger

---

[13] Rahman also argues the Commonwealth introduced the iPad Mini to suggest that Rahman had taken it from Baynes. Brief of Appellant, at 43. Rahman's appeal challenging the convictions arising from the robbery of Slaughter and Baynes, docketed under 2550 EDA 2018, is not presently before the Court. We address the relevance and potential prejudice associated with iPad Mini's admission only insofar as it affects the convictions presently on appeal. Moreover, even a cursory review of the trial testimony reveals Rahman's assertion that the Commonwealth attempted to conflate Rahman's iPad Mini seized from the Elantra with the iPod taken from Baynes to be factually inaccurate. ***See*** N.T. Trial 12/8/16, at 130 (Q: Now, just for the record, because I believe earlier you said iPad, is it [an] iPad or iPod? A: An iPod.").

of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Pa.R.E. 403. "[E]vidence will not be prohibited merely because it is harmful to the defendant." ***Commonwealth v. Dillon***, 925 A.2d 131, 141 (Pa. 2007). "Exclusion is limited to evidence so prejudicial that it would inflame the jury to make a decision based upon something other than the legal propositions relevant to the case." ***Commonwealth v. Owens***, 929 A.2d 1187, 1191 (Pa. Super. 2007). In balancing probative value against potential prejudice, "Pennsylvania courts are not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged." ***Commonwealth v. Antidormi***, 84 A.3d 736, 751–52 (Pa. Super. 2014).

Rahman preserved his challenge by litigating a pre-trial motion *in limine*. N.T. Motions Hearing, 10/31/16, at 21, 25. The court denied Rahman's motion on the grounds that the evidence seized from the Elantra was part of the "investigation of the items found in the search which led to the other complainants." Pa.R.A.P. 1925(a) Opinion, 7/30/18, at 18. Moreover, the court found "all [items] formed part of the narrative of the police investigation and [were] necessary to explain the circumstances of the later identifications of [Rahman]." ***Id.*** Indeed, the record shows the Commonwealth elicited

testimony from Detective Cremen regarding the above-mentioned devices for the purposes of explaining how the police identified additional victims beyond Stanley.[14]  N.T. Trial, 12/12/16, at 103–108.  The evidence shows the police seized cell phones from the Elantra, and that some of those cell phones were used to locate additional victims, thereby connecting the seemingly isolated robbery of Stanley with prior incidents.  **See id.**  Consequently, we cannot say the Commonwealth's evidence invited the jury to convict on an improper basis.  **See Antidormi**, **supra** at 751–52; **accord** Pa.R.E. 403.  Therefore, Rahman's fourth argument fails.

Rahman's fifth claim challenges the admission of an out-of-court statement by Baynes on Sixth Amendment grounds.  **See** Brief of Appellant, at 46–60.  Rahman's convictions for the robberies of Baynes and Slaughter are the subject of a separate appeal, docketed at 2550 EDA 2018.

---

[14] The following excerpt from Detective Cremen's testimony illustrates the crux of how the Commonwealth used the ostensibly offending evidence:

> Q: Okay. Were you able to, on the 21st of July, locate any individuals through the evidence that was recovered during the search warrant?
>
> A: On the 21st, I was able to identify a Ms. Cruz and a Mr. Liang.

N.T. Trial, 12/12/16, at 107–108.

Consequently, we decline to address the instant claim as it concerns convictions that will be reviewed by a subsequent panel of this Court.[15]

In his sixth and final argument, Rahman asserts the court's exclusion of certain witnesses violated his right to present a defense. Brief of Appellant, at 51. Rahman states the court should have permitted the testimony of the following witnesses: (1) Kmetz and Treston for the purpose of impeaching Stanley regarding Stanley's probation; (2) Boston, Dunlap, and Officer Ruggia, for the purpose of impeaching Cruz by showing that Boston and Dunlap gave Officer Ruggia a description of an assailant in an unrelated robbery that was similar to Cruz's description; (3) Detective Murawski for the purpose of learning the method used to select photos that were shown to Cruz in the photo array; (4) Detective Marano to impeach Nelson regarding the hairstyle of the person who robbed him; and (5) Detective Druding for reasons this court is unable to discern. *Id.* at 51–62.

Initially, we note Rahman waived any argument regarding Kmetz, Treston, and Detective Druding.[16] His remaining claims revolve around either

---

[15] *See supra* at n.3 for more information.

[16] Rahman's claims regarding Kmetz and Treston relate to Stanley's supervised release following a conviction for burglary—a *crimin falsi* offense, knowledge of which was presented to the jury by the Commonwealth. N.T.

the relevance of evidence, or a defendant's right to impeach the credibility of

Commonwealth witnesses, which this Court has summarized as follows:

> A defendant's right of confrontation includes the right to cross-examine witnesses about possible motives to testify. However, a witness may not be contradicted on 'collateral' matters[. A] collateral matter is one which has no relationship to the case at trial. The scope and limits of cross-examination are within the discretion of the trial judge whose judgment will not be reversed in the absence of a clear abuse of that discretion, or an error or law.

*Commonwealth v. Guilford*, 861 A.2d 365, 369 (Pa. Super. 2004); *see also*

*Commonwealth v. Johnson*, 638 A.2d 940, 942–43 (Pa. 1994) (precluding

---

Trial, 12/9/16, at 25. Rahman claims Kmetz and Treston would have testified to Stanley owing restitution totaling $2,600.00. Brief of Appellant, at 55.

Our review of the record reveals two appearances of Kmetz's name in the entire record, both occuring while the court listed potential witnesses during *voir dire*. N.T. Trial, 12/5/16, at 21, 112. Further, it does not appear that Rahman ever attempted to call Treston at trial. As such, Rahman waived any claim related to either individual. *See Commonwealth v. Olsen*, 82 A.3d 1041, 1050 (Pa. Super. 2013) ("In order for a claim of error to be preserved for appellate review, a party must make a timely and specific objection before the trial court at the appropriate stage of the proceedings; the failure to do so will result in waiver of the issue."). Any further claims regarding Stanley's probation file were likewise waived when Rahman failed to object the court's decision to exclude it. N.T. Trial, 12/12/16, at 216; *see also Olsen*, *supra* at 1050.

Rahman waived claims regarding Detective Druding by failing to include any relevant argument in his brief. *See Wirth v. Commonwealth*, 95 A.3d 822, 837 (Pa. 2014) ("Where an appellate brief fails to provide any discussion of a claim with citation relevant authorities . . . that claim is waived.").

testimony proffered for purpose of impugning complaining witness' credibility regarding matter collateral to case at issue).

Rahman asserts he would have been able to impeach Cruz with the testimony of Boston, Dunlap, and Officer Ruggia regarding the description of an assailant in an unrelated robbery. Brief of Appellant, at 57–58. We find no abuse of discretion in the court's decision to exclude as collateral testimony with the proposed purpose of recounting a robbery unrelated to Rahman. *See Guilford*, *supra* at 369.

Rahman alleges Detective Murawski would have testified to the process used to create the photo array Cruz used to identify Rahman, and that Cruz initially stated the firearm her assailant used was black. Brief of Appellant, at 58. The court denied Rahman's request as cumulative, given the fact that Detective Cremen had previously testified to the process used to create the photo array, and because Rahman cross-examined Cruz using the initial statement she gave to the police. *See* N.T. Trial, 12/12/16, at 227–32. We find no abuse of discretion in denying such testimony for being needlessly cumulative. *See Commonwealth v. G.D.M.*, *Sr.*, 926 A.3d 984, at 989 (Pa. Super. 2007) (defining cumulative evidence as "additional evidence of the same character as existing evidence and that supports a fact established by the existing evidence") (citing Black's Law Dictionary, Seventh Edition, at 577).

Lastly, Rahman alleges Detective Marano would have impeached Natson regarding the description he gave to the police of his assailant as "clean cut." Brief of Appellant, at 59; *see also* N.T. Trial, 12/12/16, at 222–26. The court ruled that such testimony had been covered in Rahman's cross examination of Natson and that the testimony of Detective Marano would be needlessly cumulative. *Id.* at 226; *see also* N.T. Trial, 12/7/16, at 157–58 (clarifying the following on redirect examination: (1) when Natson described Rahman to Detective Murano as "clean cut," Natson was referring to facial hair; and (2) Natson saw his assailant had dreadlocks). We agree with the trial court's assessment that Detective Marano's testimony would have been needlessly cumulative. *See G.D.M.*, *Sr.*, *supra* at 989. Consequently, his last argument also lacks merit.

Judgment of sentence affirmed. Motion for relief denied. Motion to strike granted.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/1/19

- 34 -